## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH GREENFIELD AND PAUL SHERRY,<br><br>Plaintiffs,<br><br>v.<br><br>AUDI OF AMERICA, LLC, AND AUDI AG,<br><br>Defendants. | C.A. No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAN**DED |

Plaintiffs Keith Greenfield and Paul Sherry ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants Audi AG and Audi of America, LLC (unless otherwise indicated, both Defendants are collectively referred to as "Audi"). All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.    NATURE OF THE ACTION

1.    In September 2015, and again in November 2015, Volkswagen and Audi admitted using defeat device software to activate emissions controls when diesel cars were being smog tested and deactivate those controls during normal, on-road driving. Volkswagen, Audi AG's parent company, took the position that the diesel defeat device was an isolated incident, which it dubiously blamed on "rogue engineers."

2.      It was not an isolated incident, and the unlawful activity was not perpetrated by a few "rogue engineers" but by hundreds of personnel throughout the companies.

3.      Moreover, Audi's unlawful activity was not limited to its diesel vehicles.  It has recently been reported that Audi has been hiding its use of a completely different defeat device on at least its 3.0-liter *gasoline* Q5, Q 7, A6 and A8 models equipped with automatic transmissions.  In those cars, Audi installed software which detects when the vehicle undergoes emissions and mileage testing and then programs the car to shift into each higher gear sooner, thus reducing engine RPM, fuel consumption, and $CO_2$ emissions.  But otherwise, during normal driving operation, the cars' shift points are higher, resulting in more power and acceleration, but increased fuel consumption, lower MPG, and higher $CO_2$ emissions.

4.      Plaintiff Greenfield leased a new 2015 Audi model A8L.  According to Audi's representations contained in the "Monroney Sticker" on the vehicle Plaintiff purchased, Plaintiff's vehicle emitted 418 grams of carbon dioxide per mile and had estimated fuel efficiency of 18 miles per gallon in city driving and 29 miles per gallon on the highway. Plaintiff Sherry purchased a used 2014 Audi A6 that had a "Monroney Sticker" displaying similar information.   Upon information and belief, these representations were false. Unbeknownst to Plaintiffs, the vehicles that they purchased were surreptitiously equipped with a "defeat device" designed to limit emissions and increase fuel efficiency when the vehicles were being subjected to regulatory emissions and fuel efficiency testing, but not during regular use. As a result, the *actual* $CO_2$ emissions and fuel efficiency of Plaintiffs' vehicles are materially different from the representations set forth on the Monroney Sticker and in advertisements and marketing representations made by Audi to consumers.

5.     Plaintiffs bring this proposed class action for damages on behalf of themselves and all other persons and entities nationwide who purchased or leased an Audi vehicle equipped with the defeat device, including but not limited to A6, A8, Q5 and Q7 models with 3.0 liter gasoline engines and automatic transmissions, and perhaps others  (collectively, the "Affected Vehicles").

6.     Plaintiffs and members of the class all suffered damages as a result of Audi's misrepresentations and omissions regarding the defeat device.  Plaintiffs and class members overpaid to purchase vehicles incapable of providing the balance of performance, efficiency, and cleanliness that Audi represented these Affected Vehicles to offer.  Plaintiffs and the class members have also suffered diminution of vehicle value now that the existence of the defeat devices has been revealed publicly.  Accordingly, Plaintiffs and similarly situated owners and lessees of the Affected Vehicles are entitled to compensation for their losses, including losses related to increased fuel expenditures.

## II.     JURISDICTION & VENUE

7.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. Minimal diversity exists for two independent reasons:  (i) plaintiffs and the defendants are diverse, and (ii) the proposed class contains citizens of states outside of defendants' home jurisdictions, as per 28 U.S.C. § 1332(d)(2).

8.     The Court has personal jurisdiction over Audi AG and Audi America because the alleged wrongdoing occurred in Massachusetts and because Audi AG and Audi America have sufficient minimum contacts with Massachusetts and have otherwise intentionally availed themselves of the markets in Massachusetts.

9.    Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 (b)-(c) because Audi AG and Audi America are corporate entities that are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because their contacts with this District are sufficient to subject it to personal jurisdiction.  Venue is also proper in this District because Plaintiffs have resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

### III.    PARTIES

10.    Plaintiff KEITH GREENFIELD (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts domiciled in Dover, Massachusetts.  On or about December 30, 2014, Plaintiff leased a new 2015 Audi A8L from Audi Westwood in Westwood, MA.  Plaintiff leased this vehicle for a term of 36 months for a single initial payment and is still in possession of the vehicle under the terms of the lease.  Unknown to Plaintiff, at the time the vehicle was purchased, it was designed and equipped to turn off or limit emissions reduction during normal driving conditions, resulting in $CO_2$ emissions that were higher than Audi represented and fuel economy that was lower than Audi represented.  Audi's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing Audi 3.0-liter gasoline engine vehicles with these manipulations has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Had Audi disclosed this design, and the fact that his Audi actually emitted pollutants at a much higher level than stated and that his vehicle had substantially lower fuel economy than stated, Plaintiff would not have purchased the vehicle, or would have paid less for it.

11.    Plaintiff PAUL SHERRY (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts domiciled in Swampscott, Massachusetts.  On or about October 13,

2015, Plaintiff purchased a used 2014 Audi A6 from Herb Chambers in Boston, Massachusetts. Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was designed and equipped to turn off or limit emissions reduction during normal driving conditions, resulting in CO2 emissions that were higher than Audi represented and fuel economy that was lower than Audi represented.  Audi's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing Audi 3.0-liter gasoline engine vehicles with these manipulations has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Had Audi disclosed this design, and the fact that his Audi actually emitted pollutants at a much higher level than stated and that his vehicle had substantially lower fuel economy than stated, Plaintiff would not have purchased the vehicle, or would have paid less for it.

12.    Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engaged in business, including the advertising, marketing and sale of Audi automobiles, in all 50 states.

13.    Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.  Audi AG is the parent company of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly-owned subsidiary of VW AG.  Audi AG designs, develops, manufacturers, and sells luxury automobiles.  According to Audi AG, the Audi Group sold 1.8 million cars worldwide in 2015, including more than 200,000 vehicles in the United States, with sales revenues in 2015 totaling €58.5 billion (approximately $64.34 billion).

## IV.     FACTUAL ALLEGATIONS

14.     It has been widely publicized that Audi and its parent Volkswagen, for years, engaged in an extensive scheme to misrepresent the emissions of their so-called "clean diesel" vehicles by equipping them with a defeat device.

15.     The defeat device at issue in that litigation used a multi-faceted algorithm to detect when vehicles were being operated on dynamometers, such as is used in smog testing facilities and by the Environmental Protection Agency, the California Air Resources Board, and state regulators when determining whether vehicles comply with emissions standards.  When the diesel defeat device detected that the car was undergoing emissions testing, it would engage full emissions controls, which allowed the diesel vehicles to pass stringent standards for Oxides of Nitrogen (NOx) emissions.  But during on-road driving, these same cars emitted 10-40 times the legal limits for NOx because the emission controls were turned off.

16.     It has been recently discovered and widely reported that Audi equipped many of its *gasoline* vehicles with an entirely different defeat device to falsify and misrepresent carbon dioxide emissions and, upon information and belief, fuel efficiency.  According to reports, this defeat device is particularly nefarious because it does not directly affect emissions controls, so it is very difficult to detect.  Instead, when the device detects that the car is in a testing bay, it changes the shift points of the automatic transmission so that the vehicle operates in a "low rev" mode, that is, it shifts into the next higher gear sooner than it otherwise would.  This modified shifting scheme effectively falsifies the vehicle's emissions and fuel efficiency results by keeping the engine RPM artificially low, thereby using less fuel and emitting less carbon

dioxide.[1]  Conversely, when the vehicle is not in a testing bay, the defeat device deactivates and allows the vehicle to operate at higher revolutions per minute such that the vehicle has more power and acceleration, but also consumes more fuel and emits more carbon dioxide.[2]

17.    Additional reports indicate that Audi executives were aware of this defeat device and instructed that it be utilized as much as possible to mispresent the performance of Audi vehicles.[3]  According to these reports, Audi installed this defeat device in models equipped with the AL 551 transmission, including the A6, A8, and Q5, as late as May 2016, eight months after public disclosure of the defeat device utilized by Audi and its parent Volkswagen on "clean diesel" vehicles in September 2015.[4]

18.    Federal law requires that the label affixed to every new vehicle sold in the United States must contain, among other requirements, a statement of the estimated fuel efficiency and number of grams of carbon dioxide emitted per mile driven by the vehicle.   49 CFR 575.401(e)(8)(v).  Consistent with this requirement, the "Monroney Sticker" on the vehicle purchased by Plaintiff Greenfield included a representation that the vehicle emits 418 grams of

---

[1] *CARB Finds New Audi Defect Device, German Paper Digs Up Smoking Gun Document*, November 6, 2016, http://www.forbes.com/sites/bertelschmitt/2016/11/06/carb-finds-new-audi-defeat-device-german-paper-digs-up-smoking-gun-document/#6ae523791ce8.

[2] *VW Recovery Dealt Blow by Poetsch Probe*, *Audi Cheating Report*, November 7, 2016, https://www.bloomberg.com/news/articles/2016-11-07/vw-recovery-dealt-blow-by-poetsch-probe-audi-cheating-report.

[3] "Volkswagen and Audi management discussed the CO2 defeat-device software in detail during a 'Summer Drive' event in South Africa in the second half of February 2013, according to one person familiar with the situation and excerpts from the minutes of the meeting, which were reviewed by THE WALL STREET JOURNAL.  According to the minutes, Axel Eiser, the head of Audi's powertrain division, said:  "the shifting program needs to be configured so that it runs at 100% on the treadmill but only 0.01% with the customer."  *New Discovery Broadens VW Emissions-Cheating Crisis*, November 6, 2016, http://www.wsj.com/articles/volkswagen-probe-in-germany-extended-to-chairman-1478429066.  This is an astounding admission of deception.

[4] *CARB Finds New Audi Defect Device, German Paper Digs Up Smoking Gun Document*, November 6, 2016, http://www.forbes.com/sites/bertelschmitt/2016/11/06/carb-finds-new-audi-defeat-device-german-paper-digs-up-smoking-gun-document/#6ae523791ce8.

carbon dioxide per mile and had estimated fuel efficiency of 18 miles per gallon in the city and 29 miles per gallon on the highway.  Plaintiff Sherry's Monroney Sticker contained similar information.  Upon information and belief, as a result of Defendants' use of the defeat device, these representations were false.

19.    Plaintiffs have suffered damages as a result of his purchase of an Affected Vehicle, including but not limited to (i) overpayment for a vehicle that is incapable of performing as represented, (ii) future additional fuel costs, (iii) loss of performance from future repairs, and (iv) diminution of vehicle value.

## V.    FRAUDULENT CONCEALMENT ALLEGATIONS

20.    Plaintiffs make the following specific fraud allegations with as much specificity as possible at this point in the litigation:

a.    **Who**:  Audi actively concealed the defeat device present in the Affected Vehicles from Plaintiffs and the class members when Audi continued to manufacture, distribute, sell and lease the Affected Vehicles.  Plaintiffs are unaware of and therefore cannot specifically identify the true names and identities of specific Audi officials responsible for such decisions, except that Plaintiffs can identify Axel Eiser, the head of Audi's powertrain division, as having knowledge and intent that the defeat device be used in Affected Vehicles, in addition to other executives at the "Summer Drive" event in South Africa in the second half of February 2013.

b.    **What**:  Audi and at least the executives at the "Summer Drive" event in South Africa in the second half of February 2013, including Axel Eiser, knew, or were reckless or negligent in not knowing, that the Affected Vehicles contain the defeat device, as alleged herein.  Audi concealed the defeat device from Plaintiffs and the class members they seek to represent and made misrepresentations about $CO_2$ emissions and fuel efficiency.

c.    **When**:  Audi concealed material information regarding the defeat device in the Affected Vehicles sold and/or leased from at least February 2013, but in likelihood for many years before then—namely, that the reported carbon dioxide emissions and fuel consumption estimates were false, that Audi had not disclosed the truth about the defeat device in Affected Vehicles to anyone outside of Audi, and that Audi had not taken any action to inform consumers about the true nature of the Affected Vehicles.

d.    **Where**:  Audi concealed material information regarding the true nature of the Affected Vehicles in connection with every sale and lease transaction involving Affected Vehicles at least in the United States, if not worldwide.   Plaintiffs are aware of no communication, document, or other interaction with anyone outside of Audi before the date of filing of this Complaint, in which Audi disclosed the true nature of the defeat device in each and every Affected Vehicle.  The existence of the defeat device in the Affected Vehicles was not disclosed in Audi's marketing, warranties, documentation, website, or any communications with Plaintiffs and vehicle owners.

e.    **How**:  Audi concealed material information regarding the defeat device at all times prior to the date of this Complaint, including that the existence of the defeat device manipulates the performance of the Affected Vehicles.  Audi actively concealed the truth about the existence and nature of the defeat device from Plaintiffs and class members, even though Audi knew that information regarding the defeat device would be important to a reasonable consumer.   Audi falsely reported the $CO_2$ emissions levels and fuel consumption on the Monroney labels affixed to the Affected Vehicles and its sales and marketing materials distributed and viewed by consumers and regulators.

f.     **Why**:  Audi concealed material information about the defeat device in Affected Vehicles for the purpose of inducing Plaintiffs and class members to continue to and repeatedly purchase and/or lease Affected Vehicles, rather than purchasing and/or leasing competing vehicles.  If Audi had disclosed the truth about the defeat device, or had not used the defeat devices, thus rendering the cars either less powerful or less efficient and less environmental friendly—assuming they could be legally sold at all—then Plaintiffs would not have purchased the Affected Vehicles or he would have paid less.

## VI.     TOLLING OF STATUTE OF LIMITATIONS

### A.     Fraudulent Concealment Tolling

21.     Upon information and belief, prior to the date of this Complaint, and at least as early as February 2013, if not earlier, Audi knew of the defeat device in the Affected Vehicles, but continued to distribute, sell, and/or lease the Affected Vehicles to Plaintiffs and the class members.  In doing so, Audi concealed from or failed to notify Plaintiffs and the class members about the true nature of the Affected Vehicles.   Any applicable statute of limitations has therefore been tolled by Audi's knowledge, active concealment, and denial of the facts alleged herein.

### B.     Estoppel

22.     Audi was under a continuous duty to disclose to Plaintiffs and the class members the existence of the defeat device, which substantially affects the true character, quality, performance, and nature of the Affected Vehicles.  Audi actively concealed the true character, quality, performance, and nature of the defeat device in the Affected Vehicles, and Plaintiffs and the class members reasonably relied upon Audi's knowing and active concealment of these facts. Audi is accordingly estopped from relying on any statute of limitations in defense of this action.

For these same reasons, Audi is estopped from relying upon any warranty mileage and age limitations in defense of this action.

## C.    Discovery Rule

23.    The claims for relief alleged herein did not accrue until Plaintiffs and the class members discovered that the Affected Vehicles contained the defeat device.

24.    Plaintiffs and the class members had no realistic ability to identify the defeat device until—at the earliest—November 7, 2016, when published reports surfaced for the first time disclosing the existence of the defeat device.

25.    Despite their exercise of due diligence, Plaintiffs and the class members were not reasonably able to discover the defeat device until after they purchased or leased the Affected Vehicles.  Accordingly, their claims for relief did not accrue until they discovered that the defeat device caused the Affected Vehicles to fail required emissions standards.

## VII.    CLASS ACTION ALLEGATIONS

26.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following classes (collectively, the "Classes"):

### The Massachusetts Class

All persons or entitles in the state of Massachusetts who are current or former owners and/or lessees of an Affected Vehicle.[5]

### The Alabama Class

All persons or entitles in the state of Alabama who are current or former owners and/or lessees of an Affected Vehicle.

---

[5] At present, on information and belief, Affected Vehicles include Audi A6, A8, Q5 and Q7 vehicles equipped with Audi's 3.0 liter gasoline engine and automatic transmission.  Discovery and further investigation may reveal additional models of vehicles to be included in the definition of Affected Vehicles.

### The Alaska Class

All persons or entitles in the state of Alaska who are current or former owners and/or lessees of an Affected Vehicle.

### The Arizona Class

All persons or entitles in the state of Arizona who are current or former owners and/or lessees of an Affected Vehicle.

### The Arkansas Class

All persons or entitles in the state of Arkansas who are current or former owners and/or lessees of an Affected Vehicle.

### The California Class

All persons or entitles in the state of California who are current or former owners and/or lessees of an Affected Vehicle.

### The Colorado Class

All persons or entitles in the state of Colorado who are current or former owners and/or lessees of an Affected Vehicle.

### The Connecticut Class

All persons or entitles in the state of Connecticut who are current or former owners and/or lessees of an Affected Vehicle.

### The Delaware Class

All persons or entitles in the state of Delaware who are current or former owners and/or lessees of an Affected Vehicle.

### The Florida Class

All persons or entitles in the state of Florida who are current or former owners and/or lessees of an Affected Vehicle.

### The Georgia Class

All persons or entitles in the state of Georgia who are current or former owners and/or lessees of an Affected Vehicle.

### The Hawaii Class

All persons or entitles in the state of Hawaii who are current or former owners and/or lessees of an Affected Vehicle.

### The Idaho Class

All persons or entitles in the state of Idaho who are current or former owners and/or lessees of an Affected Vehicle.

### The Illinois Class

All persons or entitles in the state of Illinois who are current or former owners and/or lessees of an Affected Vehicle.

### The Indiana Class

All persons or entitles in the state of Indiana who are current or former owners and/or lessees of an Affected Vehicle.

### The Iowa Class

All persons or entitles in the state of Iowa who are current or former owners and/or lessees of an Affected Vehicle.

### The Kansas Class

All persons or entitles in the state of Kansas who are current or former owners and/or lessees of an Affected Vehicle.

### The Kentucky Class

All persons or entitles in the state of Kentucky who are current or former owners and/or lessees of an Affected Vehicle.

### The Louisiana Class

All persons or entitles in the state of Louisiana who are current or former owners and/or lessees of an Affected Vehicle.

### The Maine Class

All persons or entitles in the state of Maine who are current or former owners and/or lessees of an Affected Vehicle.

### The Maryland Class

All persons or entitles in the state of Maryland who are current or former owners and/or lessees of an Affected Vehicle.

### The Michigan Class

All persons or entitles in the state of Michigan who are current or former owners and/or lessees of an Affected Vehicle.

### The Minnesota Class

All persons or entitles in the state of Minnesota who are current or former owners and/or lessees of an Affected Vehicle.

### The Mississippi Class

All persons or entitles in the state of Mississippi who are current or former owners and/or lessees of an Affected Vehicle.

### The Missouri Class

All persons or entitles in the state of Missouri who are current or former owners and/or lessees of an Affected Vehicle.

### The Montana Class

All persons or entitles in the state of Montana who are current or former owners and/or lessees of an Affected Vehicle.

### The Nebraska Class

All persons or entitles in the state of Nebraska who are current or former owners and/or lessees of an Affected Vehicle.

### The Nevada Class

All persons or entitles in the state of Nevada who are current or former owners and/or lessees of an Affected Vehicle.

### The New Hampshire Class

All persons or entitles in the state of New Hampshire who are current or former owners and/or lessees of an Affected Vehicle.

### The New Jersey Class

All persons or entitles in the state of New Jersey who are current or former owners and/or lessees of an Affected Vehicle.

### The New Mexico Class

All persons or entitles in the state of New Mexico who are current or former owners and/or lessees of an Affected Vehicle.

### The New York Class

All persons or entitles in the state of New York who are current or former owners and/or lessees of an Affected Vehicle.

### The North Carolina Class

All persons or entitles in the state of North Carolina who are current or former owners and/or lessees of an Affected Vehicle.

### The North Dakota Class

All persons or entitles in the state of North Dakota who are current or former owners and/or lessees of an Affected Vehicle.

### The Ohio Class

All persons or entitles in the state of Ohio who are current or former owners and/or lessees of an Affected Vehicle.

### The Oklahoma Class

All persons or entitles in the state of Oklahoma who are current or former owners and/or lessees of an Affected Vehicle.

### The Oregon Class

All persons or entitles in the state of Oregon who are current or former owners and/or lessees of an Affected Vehicle.

### The Pennsylvania Class

All persons or entitles in the state of Pennsylvania who are current or former owners and/or lessees of an Affected Vehicle.

### The Rhode Island Class

All persons or entitles in the state of Rhode Island who are current or former owners and/or lessees of an Affected Vehicle.

### The South Carolina Class

All persons or entitles in the state of South Carolina who are current or former owners and/or lessees of an Affected Vehicle.

### The South Dakota Class

All persons or entitles in the state of South Dakota who are current or former owners and/or lessees of an Affected Vehicle.

### The Tennessee Class

All persons or entitles in the state of Tennessee who are current or former owners and/or lessees of an Affected Vehicle.

### The Texas Class

All persons or entitles in the state of Texas who are current or former owners and/or lessees of an Affected Vehicle.

### The Utah Class

All persons or entitles in the state of Utah who are current or former owners and/or lessees of an Affected Vehicle.

### The Vermont Class

All persons or entitles in the state of Vermont who are current or former owners and/or lessees of an Affected Vehicle.

### The Virginia Class

All persons or entitles in the state of Virginia who are current or former owners and/or lessees of an Affected Vehicle.

### The Washington Class

All persons or entitles in the state of Washington who are current or former owners and/or lessees of an Affected Vehicle.

### The West Virginia Class

All persons or entitles in the state of West Virginia who are current or former owners and/or lessees of an Affected Vehicle.

### The Wisconsin Class

All persons or entitles in the state of Wisconsin who are current or former owners and/or lessees of an Affected Vehicle.

### The Wyoming Class

All persons or entitles in the state of Wyoming who are current or former owners and/or lessees of an Affected Vehicle.

### The District of Columbia Class

All persons or entitles in the District of Columbia who are current or former owners and/or lessees of an Affected Vehicle.

27.    Excluded from the Classes are (i) Audi and any entity in which Audi has a controlling interest, and their legal representatives, officers, directors, employees, assigns and

successors; (ii) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (iii) Class Counsel.

28.     Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries suffered by Plaintiffs and/or the Class Members.

29.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

30.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

31.     **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are at least hundreds-of-thousands of members of the Classes, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Audi's books and records.  Audi sold more than 270,000 Affected Vehicles in the United States from 2013 to the present, including thousands in the state of Massachusetts.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

32.     **Commonality**.  Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and include:

    a.     whether Audi designed, marketed, distributed, leased, and/or sold the Affected Vehicles in the United States and California;

    b.  whether the Affected Vehicles that Audi designed, marketed, distributed, leased, and/or sold contained a defeat device;

    c.  whether Audi knew of the defeat device at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

    d.  whether Audi knew that its representations regarding the emissions and/or fuel efficiency of the Affected Vehicles were false at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

    e.  whether Audi's conduct violates consumer protection statutes and other laws as asserted herein;

    f.  whether Audi's actions violate California consumer protection laws;

    g.  whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

    h.  whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    i.  whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

33.  **Typicality**.  Plaintiffs' claims are typical of the claims of the Class Members whom Plaintiffs seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class Member purchased an Affected Vehicle and were comparably injured through Audi's wrongful conduct as described above.

34.  **Adequacy**.  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs' interests do not conflict with the interests of the Class Members.  Further, Plaintiffs have retained counsel competent and

experienced in complex class action litigation, including vehicle defect litigation, and Plaintiffs intend to prosecute this action vigorously.  Therefore, the interests of the Class Members will be fairly and adequately protected.

35.     **Predominance of Common Issues**.  A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members.

36.     **Declaratory and Injunctive Relief**.  Federal Rule of Civil Procedure 23(b)(2): Audi has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

37.     **Superiority**.  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to all other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as Audi.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.  The Classes are ascertainable and the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class Members.  Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM

## FRAUDULENT CONCEALMENT

## (ON BEHALF OF ALL CLASSES)

38.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

39.    Plaintiffs brings this Count on behalf of all Classes.

40.    Audi concealed the defeat device that changes the shift points of the automatic transmission so that the Affected Vehicles operate in a "low rev" mode, that is, it shifts into the next higher gear sooner than it otherwise would, which effectively falsifies the Affected Vehicles' emissions and fuel efficiency results by keeping the engine RPM artificially low, thereby using less fuel and emitting less carbon dioxide.  Audi also concealed that, when the vehicle is not in a testing bay, the defeat device deactivates and allows the vehicle to operate at higher revolutions per minute such that the vehicle has more power and acceleration, but consumes more fuel and emits more carbon dioxide.

41.    Audi made material representations and statements of fact to Plaintiffs and the Classes that resulted in Plaintiffs and the Classes reasonably believing the state of affairs to be other than what it actually was, such as that Audi's Affected Vehicles actually emitted the amount of $CO_2$ as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

42.    Audi executives were aware of this defeat device and instructed that it be utilized as much as possible to misrepresent the performance of the Affected Vehicles.

43.    Audi intended that Plaintiffs and the other members of the Classes rely on the misrepresentations and omissions described above, so that Plaintiffs and other class members would purchase the Affected Vehicles.

44.   The truth about the defeat device and Audi's manipulations of the "low rev" mode was only known to Audi; Plaintiffs and the Class members did not know of these facts, and Audi actively concealed these facts from them.

45.   Audi had a duty to disclose the truth about the defeat device and Audi's "low rev" mode manipulations because Audi (i) possessed exclusive knowledge about the defeat device and the manipulations, and (ii) intentionally concealed the foregoing from Plaintiffs and all members of the Classes.

46.   Plaintiffs and all members of the Classes reasonably relied upon Audi's deception.  They had no way of knowing that Audi's representations were false and/or misleading.  As consumers, Plaintiffs and the Class members could not unravel Audi's deceptions on their own.  Rather, Audi intended to deceive Plaintiffs and the Class by concealing the true facts about the defeat device and Audi's "low rev" mode manipulations.

47.   Audi's false representations and omissions were material to consumers, because they concerned the exhaust and mileage performance of the Affected Vehicles, as well as the overall performance of the engines in the Affected Vehicles.

48.   The foregoing conduct constitutes fraudulent concealment or fraud by concealment under the laws of all of the states and the District of Columbia.

49.   Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiffs and members of the Classes would not have purchased or leased the Affected Vehicles or would have paid less for them.

50.   The foregoing acts, omissions and practices proximately caused Plaintiffs and the other members of the Classes to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to

remove the effects of the CO2 Defeat Device without compromising each Affected Vehicle's performance, and excess cost for gasoline expenditures.

51.     Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiffs and the Classes.

52.     As a result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

53.     Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to Plaintiffs and the Classes.

<strong>SECOND CLAIM</strong>

<strong>VIOLATIONS OF THE MASSACHUSETTS UNFAIR AND<br/>DECEPTIVE PRACTICES ACT<br/>(MASS. ANN. LAWS CH. 93A, SECTION 11)</strong>

<strong>(ON BEHALF OF THE MASSACHUSETTS CLASS)</strong>

54.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

55.     This claim is brought on behalf of the Massachusetts Class.

56.     Massachusetts Gen. Laws Ch. 93A, § 2 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" (the Massachusetts Act).

57.     Audi's conduct, as described herein, was and is in violation of the Massachusetts Act. Audi's conduct violates the Massachusetts Act in at least the following ways:

i.     Audi provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Affected Vehicles such as that its Affected

Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

ii.     Audi knowingly and intentionally concealed from Plaintiffs and the other Class members that the defeat device changes the shift points of the automatic transmission so that the Affected Vehicles operate in a "low rev" mode, that is, they shift into the next higher gear sooner than they otherwise would, which effectively falsifies the Affected Vehicles' emissions and fuel efficiency results by keeping the engine RPM artificially low, thereby using less fuel and emitting less carbon dioxide.  Audi also concealed that, when the Affected Vehicles are not in a testing bay, the defeat device deactivates and allows the Affected Vehicles to operate at higher revolutions per minute such that the Affected Vehicles have more power and acceleration, but consume more fuel and emit more carbon dioxide.

58.     Audi's conduct occurred in the course of trade or commerce and had the tendency to deceive.  Audi's conduct was also unfair because its practices (i)  are within at least the penumbra of common-law, statutory, or other established concept of unfairness; (ii) are immoral, unethical, oppressive or unscrupulous; and/or (iii) cause substantial injury to consumers.

59.     Audi intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

60.     In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by Audi's failure to disclose the defeat device in the Affected Vehicles.

61.     Audi failed to reveal facts that were material to the transactions in light of Audi's representations discussed throughout this complaint, such as that its Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately estimated fuel economy numbers which is not the case.

62.     Audi deliberately withheld material facts—such as that its Affected Vehicles emitted substantially more $CO_2$ and had substantially lower fuel economy standards—from Plaintiffs and the Class with the intent that Plaintiffs and the Class rely upon the omission.

63.     Audi made material representations and statements of fact to Plaintiffs and the Class members that resulted in Plaintiffs and the Class reasonably believing the state of affairs to be other than what it actually was, such as that its Affected Vehicles actually emitted the amount of $CO_2$ as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

64.     Audi intended that Plaintiffs and the other members of the Class rely on Audi's misrepresentations and omissions described above, so that Plaintiffs and other Class members would purchase the Affected Vehicles.

65.     Plaintiffs and Class members reasonably relied upon Audi's false misrepresentations.  They had no way of knowing that Audi's representations were false and gravely misleading.  As alleged herein, Audi engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Audi's deception on their own.

66.     Audi knew or should have known that its conduct violated the Massachusetts Act.

67.     Audi owed Plaintiffs and the Class a duty to disclose the truth about Audi's manipulations because Audi:

       a.     Possessed exclusive knowledge that it manipulated the Affected Vehicles as alleged above;

       b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

       c.     Made incomplete representations about $CO_2$ output and fuel efficiency in the Affected Vehicles, while purposefully

withholding material facts from Plaintiffs and the Class that contradicted these representations.

68.    Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiffs and other members of Class would not have purchased or leased the Affected Vehicles or would have paid less for them.

69.    The foregoing acts, omissions and practices proximately caused Plaintiffs and the other members of the Class to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to remove the effects of the defeat device without compromising each Affected Vehicle's performance, and excess cost for increased gasoline expenditures.

70.    Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiffs and the Class.

71.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

72.    Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money or property, as a result of Audi's misrepresentations and omissions.

73.    Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

## THIRD CLAIM

## VIOLATIONS OF THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS OF VARIOUS STATES AND THE DISTRICT OF COLUMBIA

## (ON BEHALF OF THE NON-MASSACHUSETTS CLASSES)

74.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

75.     Plaintiffs bring this Count on behalf of the Classes associated with the states identified below.

76.     Audi's conduct described herein constitutes prohibited practices, unfair, deceptive and unconscionable conduct under the unfair and deceptive trade practices acts of the states and the District of Columbia, as follows:[6]

a.      Alaska:  The aforementioned practices by Audi were and are in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq*.;[7]

b.      Arizona:  The aforementioned practices by Audi were and are in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*;

c.      Arkansas:  The aforementioned practices by Audi were and are in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.*;

d.      California:  The aforementioned practices by Audi were and are in violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.,[8] California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*, and the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

e.      Colorado:  The aforementioned practices by Audi were and are in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

---

[6] Claims under the unfair and deceptive acts and practices statutes in the states of Alabama, Georgia, Texas, West Virginia, and Wyoming are not brought at this time but will be asserted later after required notice periods under those acts have run.

[7] Damages, and not injunctive relief, are sought under the Alaska Act at this time.  Injunctive relief under the Alaska Act will not be sought until the time has run after notice under Alaska Stat. § 45.50.535.

[8] Plaintiffs and the Class do not seek to recover damages under the CLRA in this initial Complaint but will subsequently amend this Complaint to also include a request for compensatory and punitive damages under the CLRA after mailing appropriate notice and demand in accordance with Cal. Civil Code § 1782(a) & (d).

f.      Connecticut:  The aforementioned practices by Audi were and are in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq*.;

g.      Delaware:  The aforementioned practices by Audi were and are in violation of the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq*.;

h.      District of Columbia:  The aforementioned practices by Audi were and are in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*.;

i.      Florida:  The aforementioned practices by Audi were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

j.      Hawaii:  The aforementioned practices by Audi were and are in violation of Hawaii's Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq*.;

k.      Idaho:  The aforementioned practices by Audi were and are in violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*.;

l.      Illinois:  The aforementioned practices by Audi were and are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq*.;

m.      Indiana:  The aforementioned practices by Audi were and are in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, *et seq.*;

n.      Iowa:  The aforementioned practices by Audi were and are in violation of the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714h.1, *et seq.*;

o.      Kansas:  The aforementioned practices by Audi were and are in violation of the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-626, *et seq*.;

p.      Kentucky:  The aforementioned practices by Audi were and are in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq*.;

q.      Louisiana:  The aforementioned practices by Audi were and are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

r.      Maine:  The aforementioned practices by Audi were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq*.;[9]

s.      Maryland:  The aforementioned practices by Audi were and are in violation of the Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

t.      Michigan:  The aforementioned practices by Audi were and are in violation of the Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

u.      Minnesota:  The aforementioned practices by Audi were and are in violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

v.      Mississippi:  The aforementioned practices by Audi were and are in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

w.      Missouri:  The aforementioned practices by Audi were and are in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

---

[9] Damages are not sought at this time under the Maine Act, and a claim for damages under the Maine Act will be added later after the time has run under Me. Rev. Stat. Ann. Tit. 5, § 213(A).

x.    Montana:  The aforementioned practices by Audi were and are in violation of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq*.;

y.    Nebraska:  The aforementioned practices by Audi were and are in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq*., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq*.;

z.    Nevada:  The aforementioned practices by Audi were and are in violation of the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq*.;

aa.    New Hampshire:  The aforementioned practices by Audi were and are in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-a:1, *et seq.*;

bb.    New Jersey:  The aforementioned practices by Audi were and are in violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*;

cc.    New Mexico:  The aforementioned practices by Audi were and are in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq*.;

dd.    New York:  The aforementioned practices by Audi were and are in violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

ee.    North Carolina:  The aforementioned practices by Audi were and are in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

ff.    North Dakota:  The aforementioned practices by Audi were and are in violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq*.;

gg.    Ohio:  The aforementioned practices by Audi were and are in violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.;

hh.     Oklahoma:  The aforementioned practices by Audi were and are in violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

ii.     Oregon:  The aforementioned practices by Audi were and are in violation of the Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

jj.     Pennsylvania:  The aforementioned practices by Audi were and are in violation of the Pennsylvania Unfair Trade Practices an Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

kk.     Rhode Island:  The aforementioned practices by Audi were and are in violation of the Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

ll.     South Carolina:  The aforementioned practices by Audi were and are in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

mm.     South Dakota:  The aforementioned practices by Audi were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

nn.     Tennessee:  The aforementioned practices by Audi were and are in violation of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101, *et seq.*;

oo.     Utah:  The aforementioned practices by Audi were and are in violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*;

pp.     Vermont:  The aforementioned practices by Audi were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

qq.     Virginia:  The aforementioned practices by Audi were and are in violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*;

rr.    Washington:  The aforementioned practices by Audi were and are in violation of the Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

ss.    Wisconsin: The aforementioned practices by Audi were and are in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

77.    Under statutes enacted in these states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiffs and Class members are consumers who purchased Audis' Affected Vehicles pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

78.    Under statues enacted in these states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Audi is a supplier, manufacturer, advertiser, and seller who is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

79.    Audi represented that the Affected Vehicles have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, inter alia, that the Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

80.    Audi provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Affected Vehicles such as that its Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

81.     Audi represented that the Affected Vehicles were of a particular standard, quality, or grade, when they were of another, such as that its Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

82.     Audi engaged in unconscionable commercial practices in failing to reveal material facts and information about the defeat device, which did, or tended to, mislead Plaintiffs and the Classes about facts that could not reasonably be known by the consumer including but not limited to the fact that the Affected Vehicles emitted substantially more $CO_2$ and that the stated fuel economy numbers were not accurate and were incorrectly calculated.

83.     Audi failed to reveal facts that were material to the transactions in light of Audi's representations discussed throughout this complaint, such as that its Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

84.     Audi caused Plaintiffs and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct, namely that the Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

85.     Audi deliberately withheld material facts—such as that its Affected Vehicles emitted substantially more $CO_2$ and had substantially lower fuel economy standards—from Plaintiffs and the Classes with the intent that Plaintiffs and the Class members rely upon the omission.

86.     Audi made material representations and statements of fact to Plaintiffs and the Class members that resulted in Plaintiffs and the Classes reasonably believing the state of affairs to be other than what it actually was, such as that its Affected Vehicles actually emitted the

amount of CO2 as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

87.     Audi intended that Plaintiffs and the Class members rely on their misrepresentations and omissions described above, so that Plaintiffs and the Class members would purchase the Affected Vehicles.

88.     Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiffs and other members of the Classes would not have purchased or leased the Affected Vehicles or would have paid less for them.

89.     The foregoing acts, omissions and practices proximately caused Plaintiffs and the members of the Classes to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to remove the effects of the defeat device without compromising each Affected Vehicle's performance, and excess cost for gasoline expenditures.

90.     Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiffs and the Class Members.

91.     As a direct and proximate result of this wrongful conduct, Plaintiffs and the Classes have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

92.     Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes, pray for judgment as follow:

A.       Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs as representatives of the Classes and their counsel as Class counsel;

B.       Compensatory and other damages identified herein;

C.       Awarding restitution and disgorgement of Audi's revenues or profits to Plaintiffs and the proposed Classes as permitted by applicable law;

D.       An Order requiring Audi to cease and desist from engaging in wrongful conduct and to engage in a corrective advertising campaign;

E.       Statutory pre-judgment and post-judgment interest on any amounts;

F.       Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

G.       Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

DATED:  November 16, 2016                    Respectfully submitted,

**/s/ Kristen A. Johnson**
Kristen A. Johnson (BBO #667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

Steve W. Berman (*pro hac vice to be filed*)
Sean R. Matt (*pro hac vice to be filed*)
Thomas E. Loeser (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
toml@hbsslaw.com

Christian A. Jenkins (*pro hac vice to be filed*)
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, Ohio  45208
Phone:  (513) 723-1600
Fax:  (513) 723-1620
cjenkins@minnillojenkins.com

Jeffrey S. Goldenberg (*pro hac vice to be filed*)
Todd B. Naylor (*pro hac vice to be filed*)
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio  45202
Phone:  (513) 345-8291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

*Counsel for Plaintiffs*